**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**PAULA SMITH-JACKSON,**

            **Plaintiff,**

    **v.**

**ELAINE CHAO, In her Official
Capacity as Secretary of the United
States Department of
Transportation,**

            **Defendant.**

**1:15-cv-1688-WSD**

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Magistrate Judge John K. Larkins III's Final Report and Recommendation [83] ("R&R"). The R&R recommends the Court grant in part and deny in part Defendant Elaine Chao's ("Defendant") Motion for Summary Judgment [55]. Also before the Court are Defendant's Motion for Leave to File Excess Pages [88], Partial Objections to the R&R [89] ("Objections"), and Notice of Filing of Corrected Partial Objections to the R&R [92] ("Corrected Objections").

## I.  BACKGROUND

### A.  <u>Facts</u>[1]

Plaintiff Paula Smith-Jackson ("Smith-Jackson") began her employment with Defendant in 1982 in Peoria, Illinois.  ([58] ¶ 2).  In January 2005, Smith-Jackson moved to Atlanta and began training at the air traffic control tower in Atlanta ("Atlanta Tower").  (<u>Id.</u> ¶ 4).  Smith-Jackson had previously been fully certified to work as an air traffic controller at a level 8 facility, but Atlanta had a level 12 facility, which required additional training.  (<u>Id.</u> ¶¶ 3-4).  In May 2005, Smith-Jackson withdrew from training for the operational air traffic controller position in Atlanta because of an inability to perform the required training.  (<u>Id.</u> ¶ 10).  At that time, Smith-Jackson requested a reassignment to a lower level facility.  (<u>Id.</u>).

Smith-Jackson alleges that, on November 8, 2005, she was present when a white male coworker made a racially insensitive comment to a group of visitors.  ([58] ¶ 28).  That incident caused Smith-Jackson's psychological injury, and she suffered from anxiety, depression, and post-traumatic stress disorder.  ([57.1] ¶ 4).

---

[1]    The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

Following that incident, Smith-Jackson began receiving a monthly payment from the Office of Workers' Compensation. ([58] ¶ 31).

In June 2006, Smith-Jackson was declared medically disqualified from working as an air traffic controller. ([57.1] ¶ 6). In September 2006, Defendant proposed to remove Smith-Jackson due to her failure to maintain her medical certification. ([58] ¶ 36). In October 2006, Smith-Jackson requested a permanent reassignment within the Atlanta "commuting area." (Id. ¶ 38). Later in October, Smith-Jackson turned down a job that was offered to her because it required her to drive more than 30 miles, contrary to her doctor's restrictions. (Id. ¶ 41). Smith-Jackson offered to accept the same position if it were available within her driving range. ([57.1] ¶¶ 13-15).

In November 2006, Defendant convened a "Reasonable Accommodation Team" meeting to discuss Smith-Jackson. ([58] ¶ 42). The parties dispute the actions of Defendant in attempting to accommodate Smith-Jackson, discussed in more detail below. The parties agree that, from December 2006 through June 2008, Smith-Jackson applied for numerous vacant positions throughout the agency. ([57.1] ¶ 10). In July 2007, Defendant notified Smith-Jackson that it was removing her from service effective August 18, 2007, for failing to maintain

medical certification. ([58] ¶ 52). On August 18, Smith-Jackson was terminated, but retained her workers' compensation payments. (Id. ¶ 53).

In July 2008, following some amount of internal administrative proceedings, Defendant offered Smith-Jackson a clerical position, but then withdrew the offer. ([57.1] ¶ 20). In August 2008, Smith-Jackson was placed in a permanent position as a secretary. ([58] ¶ 63). In July 2011, an administrative judge issued a bench decision on an Equal Employment Opportunity Commission ("EEOC") complaint that Smith-Jackson had filed, in which the administrative judge awarded her some damages but in which he did not find race, age, gender, or intentional disability discrimination. (Id. ¶¶ 64-66). In September 2011, an EEOC administrative judge increased the amount of damages awarded. (Id. ¶¶ 67-69). Defendant paid Smith-Jackson the money awarded by the initial administrative judge, but not the final EEOC decision. (Id. ¶ 73). The Court sets forth additional facts below.

B.      Procedural History

The procedural history of this case is long and involves many layers of administrative review. Where relevant, that history is discussed above and in the analysis. In this Court, Smith-Jackson filed a complaint and an amended complaint in May 2015. ([1], [2]). The complaint alleges that, in May 1997, Smith-Jackson overheard racially derogatory comments in the workplace, which

was later determined to have caused a compensable workplace injury.[2] ([2] ¶¶ 8-9).

Smith-Jackson alleges that, beginning in October 2006, she sought a reasonable accommodation in the form of a transfer to allow her to continue working after she was found medically disqualified to work as an air traffic controller. ([2] ¶¶ 12-14). She further alleges that Defendant ignored her requests while they transferred younger, white males when they became medically disqualified. (Id. ¶¶ 16-17). She alleges that, after she was fired in August 2007, she sought review from an internal agency panel, which directed Defendant to find her a vacant position. (Id. ¶¶ 21-23.]

Smith-Jackson raised claims under Title VII, for race and gender discrimination ("Count I"); the ADEA, for age discrimination ("Count II"); Title VII, for retaliation ("Count III"); and the Rehabilitation Act, for disability discrimination ("Count IV"). ([2] ¶¶ 44-51).

On October 12, 2016, Defendant filed her Motion for Summary Judgment, seeking to dismiss all of Smith-Jackson's claims. In her response brief [57], Smith-Jackson abandoned her ADEA claim. ([57] at 9 n.1).

---

[2]     The parties appear to agree for factual purposes that this incident occurred in November 2005. (See Doc. 58 ¶ 28.]

On July 5, 2017, the Magistrate Judge issued his R&R. Because Smith-Jackson abandoned her ADEA claim, the Magistrate Judge recommends the Court grant summary judgment on this claim. The Magistrate Judge next determined that Smith-Jackson is not barred from bringing suit under the acceptance-of-benefits doctrine, but that money she received from the administrative proceedings below likely must be deducted from any award she receives in this litigation. The Magistrate Judge found that Smith-Jackson presented sufficient evidence to make out a prima facie case of retaliation. With respect to Smith-Jackson's Rehabilitation Act claim, the Magistrate Judge found an issue of fact exists as to whether she was qualified for the positions to which she sought reassignment. The Magistrate Judge determined Defendant is not entitled to summary judgment on Smith-Jackson's Title VII claim, because Smith-Jackson pointed to a comparator who was working in a similar role to her, became medically unable to perform his job, and who was reassigned to a different position until he was medically able to work again as an air traffic controller. Accordingly, the Magistrate Judge recommends the Court deny summary judgment on all of Smith-Jackson's claims other than her ADEA claim.

On July 17, 2017, Defendant filed her Unopposed Motion for Extension to File Partial Objections to the Magistrate Judge's Final Report and

Recommendation [85].  Defendant requested an extension up to and including August 21, 2017, in which to file objections to the R&R, stating that she required the transcript of the June 14, 2017, oral argument ("June 14th Hearing") held before the Magistrate Judge, which she claimed could take up to two weeks to receive.

On July 21, 2017, the Court issued its Order [86] granting Defendant's motion in part, and ordering her to file, on or before August 4, 2017, her objections to the R&R.  The Court noted that Defendant, without explanation, filed her motion and requested the transcript of the June 14th Hearing three (3) days before the expiration of the fourteen (14) day objections deadline.  The Court noted that the transcript would be completed on July 26, 2017, and that an extension of over a month was excessive.  The Court also stated that no further extensions would be granted.

At midnight on August 5, 2017, Defendant filed her Objections.  The docket indicates that Defendant's Objections were filed on August 4, 2017, but were entered on the docket on August 5, 2017.  (See [89]).  This unusual occurrence indicates that Melaine A. Williams, attorney for Defendant, began the filing process of Defendant's Objections in the CM/ECF system prior to midnight, but did not finally submit her Objections until midnight on August 5, 2017.

Defendant's Objections are thirty-eight (38) pages long, not double-spaced, and the font size and type is inconsistent throughout the brief.

In her Objections Defendant argues the Magistrate Judge erred in finding that Plaintiff made out a prima facie case of gender, age, and disability discrimination. Defendant next contends that the Magistrate Judge erred in finding that Plaintiff proved direct evidence of retaliation. Finally, Defendant argues the Magistrate Judge erred in finding that the acceptance of benefits rule does not preclude Plaintiff from filing an appeal of the administrative judgment with this Court. The Objections contain several new arguments not raised before the Magistrate Judge.

The same day she filed her Objections, Defendant filed her Motion for Leave to file Excess Pages, seeking to file Objections in excess of the twenty-five page limitation set forth in Local Rule 7.1(D), NDGa.

On August 16, 2017, Defendant, without seeking leave of the Court, filed her Corrected Objections. Defendant states that her Corrected Objections (a) correct typos, numbers, and minor edits with word additions in italics; (b) add citations to the record; (c) update a chart to fill in missing dates; (e) add two exhibits that were cited but not attached to the original filing; and (f) reduces the memorandum to conform with the page limitations in Local Rule 7.1(D) without

making substantive changes. ([92] at 1). Defendant's Corrected Objections, like her original Objections, are not double-spaced, and the left margin is less than one inch.

## II.    CONSIDERATION OF OBJECTIONS

The Court strikes Defendant's Objections and Corrected Objections for several reasons. First, Defendant filed her Motion for Leave to file Excess Pages on the same day she filed her Objections. Defendant's Objections are thirty-eight (38) pages long. The Court's Standing Order Regarding Civil Litigation provides that the Court "generally does not approve extensions of page limitations[,]" and requires that parties "seeking an extension of the page limit must do so at least ten (10) days in advance of their filing deadline." Standing Order Regarding Civil Litigation at 3. Further, "[i]f a party files a motion to extend the page limit at the same time their brief is due, the extension request will be denied absent a compelling and unanticipated reason to exceed the page limit." Id. Defendant's Motion for Leave to File Excess Pages states she requires additional pages to address the 47 jobs for which Smith-Jackson claimed she was qualified. This is not an "unanticipated" reason to exceed the page limit. Defendant's Motion for Leave to File Excess Pages is denied.

Second, Defendant's Objections and Corrected Objections were filed late, and Defendant did not provide any explanation for her late filing of either. Rule 72(b)(2) of the Federal Rules of Civil procedure required Defendant to file and serve her written objections to the R&R no later than fourteen (14) days after the R&R was served on her. Rule 6(b)(1)(B) authorized the Court, on Defendant's motion, to extend the time for filing objections for good cause if Defendant had "failed to act because of excusable neglect." The Court extended the time period in which Defendant could file her Objections through and including August 4, 2017. Defendant did not file and serve her objections until August 5, 2017. Defendant did not provide any justification for her late filing either in her Objections or in her Corrected Objections, even after the Court noted in its August 15, 2017, Order, that the Objections were late. Defendant's late filing of her Objections caused the deadline for Plaintiff's response to the Objections to be extended.[3] (See [91]). Under these circumstances, the Court is within its discretion to strike the late-filed Objections and Corrected Objections. See Mathis v. Adams, 577 F. App'x 966, 967-68 (11th Cir. 2014) ("The district court did not

---

[3] A cursory review of the docket in this action reveals a troubling pattern by Defendant's counsel of seeking additional time in which to file documents. Defendant's counsel has sought no fewer than thirteen (13) extensions of time in this action. Enough is enough.

abuse its discretion in determining that [plaintiff] failed to file a motion as required for an after-the-fact extension under Rule 6(b)(1)(B) and because" the plaintiff's failure was within his own control) (citing <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u>, 507 U.S. 380, 395 (1993) (considering "whether [the delay] was within the reasonable control of the movant" in determining whether it resulted from excusable neglect); <u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 863 (11th Cir.2004) ("The district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision.")).

Third, Defendant's Objections and Corrected Objections fail to meet multiple requirements of the Court's Local Rules. The Objections are not double-spaced, as required by Local Rule 5.1(C). Further, the font size and type is inconsistent throughout the Objections, in violation of Local Rule 5.1(C), which requires computer documents "must be prepared in *one* of the following fonts . . . ." LR 5.1B, NDGa (emphasis added). Counsel's certificate of compliance with the font requirements of the Local Rules is thus false. Defendant's Corrected Objections likewise are not double-spaced, as required in Rule 5.1(C). Further, the Corrected Objections fail to comply with the margin requirements of Rule 5.1(D), which requires all pleadings and other documents to

have a top margin of "not less than one and one-half [] inches and a left margin of not less than one (1) inch." The Corrected Objections have a left margin of less than one inch. Counsel's flouting of these rules in the Corrected Objections is a blatant attempt to belatedly meet the 25-page limitation counsel failed to meet in the original Objections.

Finally, Defendant included in her Objections and Corrected Objections new evidence and argument not previously raised before the Magistrate Judge. This is improper, and the Court declines to consider the new evidence and arguments. See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (a district judge has discretion to decline to consider evidence and arguments that were not presented to the magistrate judge because a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court" (citation omitted)).

The Court admonishes Defendant's counsel that strict compliance with the Federal Rules of Civil Procedure, the local rules, and the standing orders of this Court is required. To not enforce them creates an unlevel playing field for litigants. To do so in this case would create a playing field that is substantially tiled to Smith-Jackson's disadvantage.

Defendant's counsel has now had two opportunities in which counsel has failed, egregiously, to comply with multiple rules. The Court declines to allow Defendant's counsel a third bite at the apple (another game of whack-a-mole), even if counsel were to seek it. Defendant's Objections and Corrected Objections are stricken.

## III.  DISCUSSION

### A.  Legal Standards

#### 1.  Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where no party has objected to the report and recommendation, the Court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

Because the Court has stricken Defendant's Objections and Corrected Objections, the Court conducts its plain error review of the Magistrate Judge's R&R. See Slay, 714 F.2d at 1095.

### 2. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two

different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

3.      McDonnell Douglas[4] Burden-Shifting Framework

Plaintiffs in an employment discrimination action may prove their case either through direct or circumstantial evidence.  See Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003) (stating the general principle in discussing jury instructions in mixed-motive Title VII cases).  In McDonnell Douglas, the Supreme Court set forth a three-step framework for proving employment discrimination claims using circumstantial evidence.  The plaintiff first has to present a prima facie case of discrimination.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  The prima facie case creates a presumption that the plaintiff was subjected to discrimination.  Id.  The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.  Id.  If the defendant is able to meet this burden, the presumption of discrimination is rebutted, and the burden of production shifts back to the plaintiff to show that the defendant's justification is just a pretext for discrimination.  Id.

The basic McDonnell Douglas framework applicable in Title VII cases may also be applied in Rehabilitation Act cases.  See Webb v. Donley, 347 F. App'x

---

[4]      McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

16

443, 445 (11th Cir. 2009).  Where a plaintiff presents direct evidence of

discrimination or retaliation, there is no need to rely on the McDonnell Douglas

framework.  Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999).

B.      Analysis

        1.      ADEA Claim

As an initial matter, the Magistrate Judge noted that Smith-Jackson

abandoned her ADEA claim.  Accordingly, the Magistrate Judge recommends the

Court grant summary judgment on this claim.  The Court finds no plain error in

this finding and recommendation, and Defendant's Motion for Summary Judgment

is granted with respect to Smith-Jackson's ADEA claim.  See Slay, 714 F.2d at

1095.

        2.      Whether the Acceptance-of-Benefits Doctrine Bars Smith-
                Jackson's Claims

The Magistrate Judge next determined that Smith-Jackson is not barred from

bringing suit under the so-called "acceptance-of-benefits doctrine," but that money

she received from the administrative proceedings below likely must be deducted

from any award she receives in this litigation.

The Eleventh Circuit has explained that it is "well settled that when a litigant

accepts the substantial benefits of a judgment, voluntarily and intentionally, and

with knowledge of the facts, he waives the right to appeal from an otherwise

adverse judgment." Fidelcor Mortg. Corp. v. Ins. Co. of N. Am., 820 F.2d 367, 370 (11th Cir. 1987). A mere subjective intent to appeal portions of a judgment is insufficient to overcome the general principle. Id. The Circuit has recently explained that this "acceptance of benefits doctrine" is a kind of equitable estoppel. Palmer Ranch Holdings Ltd. v. C.I.R., 812 F.3d 982, 994 (11th Cir. 2016). The Palmer Ranch court instructed that the parties' objective manifestations of intent should determine whether an appeal can go forward despite a party's acceptance of the payment on a judgment. 812 F.3d at 995.

The Eleventh Circuit has not opined on whether a plaintiff's acceptance of payment in an administrative proceeding acts, under the acceptance-of-benefits doctrine, as a jurisdictional bar to *de novo* review in a district court. The Fifth Circuit, however, has rejected this argument. In Massingill v. Nicholson, 496 F.3d 382, 386 (5th Cir. 2007), the court held that, while a plaintiff could not accept some portions of the administrative judgment and seek review of others, nothing in the authorizing statute precluded district court review where an award had been partially or entirely rendered. Id. The court further reasoned that the rationale behind the satisfaction of judgment doctrine—that a party is entitled to repose after paying a judgment—was not a significant factor given that the statute only gives the plaintiff 90 days to file a lawsuit. Id. Ultimately, the Fifth Circuit concluded

that the suit could go forward, but that the defendant could counterclaim for the money paid.  Id.  The defendant could then "obtain[] offset against any recovery by [plaintiff] and judgment against [plaintiff] if no liability is found or the offset is greater than the recovery."  Id. at 386-87.

The Magistrate Judge found, given the facts of this case, that the Fifth Circuit's approach in Massingill is "entirely persuasive."  (R&R at 17).  The Court agrees.  Neither party argued, and the Court does not find, that the fact that Smith-Jackson received money after the administrative proceeding should act as a jurisdictional bar to this suit.

Looking to the objective manifestations of the parties, see Palmer Ranch, 812, F.3d at 995, the Magistrate Judge also found that there is no equitable bar to this suit.  These objective manifestations include, among other facts, (1) Smith-Jackson did not take any affirmative action in "accepting" the judgment below, (2) her complaint sought review on all claims raised in the administrative process; (3) Defendant did not make a substantive argument based on the acceptance of benefits doctrine until moving for summary judgment, more than one year after the complaint was filed.

The Magistrate Judge concluded that, under the circumstances of this case, the Court should follow the reasoning in Massingill and find that Smith-Jackson's

retention of the money paid during the administrative proceedings does not bar her from obtaining, at this point, *de novo* review of her claims in this Court, but that the money retained should offset any judgment that Smith-Jackson may obtain in this action. The Magistrate Judge further concluded that, should Smith-Jackson recoup nothing or less than the amount she already received, the difference should be returned to Defendant. The Court finds no plain error in these findings and recommendation. See Slay, 714 F.2d at 1095.

### 3. Retaliation Claim

Defendant moves for summary judgment on Smith-Jackson's retaliation claim. Direct evidence of discrimination is any evidence that reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting Wilson, 376 F.3d at 1086). Evidence can only be direct if its "intent could be nothing other than" retaliation. Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989) (discussing an age discrimination case)). Where a plaintiff shows direct evidence, a defendant must prove that it would have made the same decision absent the retaliatory intent. Id. Even with direct evidence of discrimination, a plaintiff must present evidence that an adverse employment occurred. Id.

Smith-Jackson proffered the following testimony of Kelvin Baker, a supervisor at the Atlanta tower:

Q. Do you recall anyone inquiring with the Atlanta Tower about a possible position for Ms. Jackson?

A. Nobody inquired to me, so, no, I don't have any firsthand knowledge of anybody inquiring. I wasn't involved in that process.

Q. Are you aware of anyone talking about inquiries being made about Ms. Jackson?

A. The only thing that I recall sharing with [Plaintiff] at the time -- and I'm not sure -- this was some point down the road during the process. At some point she decided to file an EEO complaint. And I had been given information that there was potentially a job that was set aside for her to be placed in here at the region, but I think because of the EEO complaint, they didn't assign her to the position.

Q. And how did you become aware of a position that was available?

A. Well, I'm not sure what position it was. I just remember that discussion being shared with me. And so I went back and -- I didn't try to tell [Plaintiff] or ask [Plaintiff] to pull her EEO complaint, but I remember we had a discussion along those lines about it wouldn't -- and this is going back 12 or 13 years now, so I'm trying to get this correct, which I'm supposed to be doing. I just remember that particular discussion being shared with me that a position was potentially available over here at the regional office for her to be placed into at that time, but because of the EEO complaint, it was being withheld until that was resolved, and it was potentially going to be the settlement for the complaint. [. . .]

Q. So before [she was fired], that's when this position was available at the regional office?

A. Before she was terminated, apparently, yes.

Q. Who told you that it was available, the position was available?

A. That the position was -- what the position was, I don't know, but it was a conversation I had with Jeffrey Vincent.

Q. And did he say who was withholding the position?

A. When he said who was withholding it, I don't know who was withholding it, but I think he had shared with me a conversation that he had with one of the people from civil rights. What was that lady's name? She's no longer the manager down there.

Q. In the civil rights division?

A. Yes, and that's –I can't think of what her name is.

Q. So Jeffrey Vincent told you that there was a position available for her at the regional office but that it was being held because she filed her EEOC complaint?

A. That was the way that I believe – that was what he shared with me, and I think that's as he understood it, but what the position was or what department and all of that stuff, I don't know.

([55.5] at 65-68).  Baker then testified that he, more or less, told Smith-Jackson that there "was potentially a position available, but because of your EEO complaint pending, it's probably being withheld until that is resolved."  (Id. at 69).  Vincent stated in a declaration that he made no statement to Baker that the FAA had a job for Smith-Jackson but was withholding it because of her EEO complaint.  ([67.2] at 2).  He also stated that the FAA did not withhold a position because of an EEO complaint.  (Id.).

The Magistrate Judge found that Smith-Jackson presented sufficient evidence to make out a prima facie case of retaliation.  He found that, reading

every reasonable inference in Smith-Jackson's favor, Baker's testimony constitutes direct evidence of retaliation connected to an adverse employment action. He also found that Baker's testimony was admissible non-hearsay under Rule 801(d)(2)(D) of the Federal Rules of Evidence, because it is "offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Accordingly, the Magistrate Judge found there is a triable issue as to whether there is direct proof of retaliation, and he recommends the Court deny Defendant's Motion for Summary Judgment as to Smith-Jackson's retaliation claim. The Court finds no plain error in these findings and recommendation, and Defendant's Motion for Summary Judgment is denied as to Smith-Jackson's retaliation claim. See Slay, 714 F.2d at 1095.

### 4. Rehabilitation Act Claim

Defendant moves for summary judgment on Smith-Jackson's Rehabilitation Act claim, arguing Smith-Jackson cannot make out a prima facie case of discrimination. Specifically, Defendant argues Smith-Jackson is not a "qualified individual" under the act, because she was unable to perform the essential functions of her job with or without a reasonable accommodation. The Magistrate

Judge found that Defendant's argument misunderstands the law as it relates to reasonable accommodation. The Court agrees.

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) she is disabled, (2) she is otherwise qualified for the position with or without accommodation, and (3) she was subject to unlawful discrimination as the result of her disability. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). The standards for determining liability under the Rehabilitation Act are the same as those under the ADA, and thus cases involving the ADA may be used as precedent in a Rehabilitation Act case. Id. Because, however, the Rehabilitation Act provisions cross-reference the statutory sections of the ADA, see, e.g., 29 U.S.C. §§ 705(9) & 794(d), ADA cases are only applicable insofar as they are consistent with the ADA Amendments Act of 2008 ("ADAAA"), which, among other things, lowered the standard for establishing a disability. See 29 C.F.R. § 1630.2(j)(1)(iv).

The Magistrate Judge found that there is a triable issue as to whether Smith-Jackson was qualified for the positions to which she sought reassignment. The Rehabilitation Act defines a qualified individual as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The only

possible accommodation identified by Smith-Jackson in this case is that she should have been reassigned to a vacant position. The ADAAA makes clear that transfer to another position can constitute a "reasonable accommodation." 42 U.S.C. § 12111(9). Whether a proposed reassignment would be reasonable depends on the circumstances of each case. Frazier-White v. Gee, 818 F.3d 1249, 1255 (11th Cir. 2016). The burden is on the employee to identify an accommodation and demonstrate that it was reasonable. Id. At the summary judgment stage, an employee meets her burden by showing an accommodation that "seems reasonable on its face." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-402 (2002). An employer's duty to provide a reasonable accommodation is only triggered if the employee made a specific demand for one. Frazier-White, 818 F.3d at 1255-56.

The Magistrate Judge noted the following: (1) Smith-Jackson points to evidence that she specifically requested reassignment to several vacant positions with Defendant following her medical disqualification from her air traffic controller position; (2) Smith-Jackson identified the other positions by vacancy number, suggesting that the positions were, in fact, vacant; (3) Defendant does not challenge several of the vacant positions Smith-Jackson identified; (4) several of the identified positions were for a secretary, where Smith-Jackson was eventually placed, suggesting that she was able to perform at least those jobs. (R&R at 44-

25

45).  The Magistrate Judge concluded that, based on this evidence, there is triable

issue as to whether Smith-Jackson identified an accommodation that seems

reasonable on its face in the form of a reassignment to a vacant position that would

have allowed he to continue working for Defendant.  Accordingly, the Magistrate

Judge recommends the Court deny summary judgment on Smith-Jackson's

Rehabilitation Act claim.  The Court finds no plain error in these findings and

recommendation, and Defendant's Motion for Summary Judgment is denied as to

Smith-Jackson's Rehabilitation Act claim.  See Slay, 714 F.2d at 1095.

### 5.      Title VII Claim

Defendant next moves for summary judgment on Smith-Jackson's Title VII

claims, arguing she failed to make out a prima facie claim of disparate treatment.

A plaintiff can establish a prima facie case of disparate treatment by showing that

she was a qualified member of a protected class who was subjected to an adverse

employment action in contrast with similarly situated employees outside of the

protected class.  Wilson, 376 F.3d at 1087.  If a plaintiff can establish a prima facie

case, that creates a presumption of discrimination.  Id.  The burden then shifts to

the defendant to merely articulate a legitimate, nondiscriminatory reason for its

actions.  Id.

Starting with the second step of the burden-shifting framework, the Magistrate Judge noted that Defendant's only statement regarding her burden to identify a legitimate, non-discriminatory reason for her employment actions is that Defendant fired Smith-Jackson for failing to maintain her medical certification. (R&R at 49 (citing [56.1] at 17)). The Magistrate Judge found that, even considering Defendant's exceedingly light burden at this stage, Defendant fails to meet the burden. The Court agrees. Smith-Jackson's claim of discrimination is that others who were medically decertified from the Air Traffic Controller position were treated differently. Defendant's argument that it based its employment decision solely on Smith-Jackson's medical decertification "is non-responsive to [Smith-Jackson's] claim." (R&R at 50).

The Magistrate Judge next found that Smith-Jackson presented a suitable comparator to establish her prima facie case. A plaintiff and a comparator must be similarly situated in "all relevant respects." Wilson, 376 F.3d at 1091. Plaintiff identified Jonathan Clausen as a comparator. Clausen was a white male who worked at the Atlanta TRACON.[5] He was medically disqualified from performing air traffic control duties and was reassigned to another position with Defendant.

_____

[5] The "TRACON" is a different facility from the Atlanta Tower that requires different training but also employs air traffic controllers.

Defendant appears to make four arguments as to why Clausen is not a valid comparator: (1) Clausen worked at TRACON, not the Atlanta tower, when he was injured; (2) Clausen was eventually medically able to be reassigned to his position as an Air Traffic Controller Specialist; (3) Clausen was not treated more favorably than Smith-Jackson, because Defendant actually offered Smith-Jackson a better job than the one they offered Clausen during his period of medical disqualification; and (4) Vincent did not treat Smith-Jackson negatively.

The Magistrate Judge rejected the first two arguments, finding that Defendant failed to articulate why these distinctions are relevant to Defendant's decision-making in this case: "Defendant does not argue nor is there any apparent evidence that would suggest that working in the TRACON would make someone more eligible for the clerical positions at issue. The same is true of the fact that Clausen was eventually able to return to his air traffic controller position." (R&R at 83). As to the third argument, the Magistrate Judge noted that there is evidence to support that Defendant only offered Smith-Jackson a position that she was medically unable to perform based on the required amount of travel to the job. The Magistrate Judge reasoned that, regardless of the jobs offered to Smith-Jackson and Clausen, "if one employee was physically capable of accepting the job offer, and another was not, the one who could accept was treated more favorably."

(R&R at 83). Finally, the Magistrate Judge noted that "Defendant . . . does not make clear why, even if accepted as true, Vincent's forwarding of Smith-Jackson's job requests would defeat her discrimination claim." (R&R at 53).

The Magistrate Judge found that Smith-Jackson pointed to a comparator, Clausen, who was working in a similar role, became medically unable to perform that job, and who was reassigned to a different position until he was medically able to work again as an air traffic controller. Defendant did not point to any material difference between the two, nor did Defendant point to any evidence that would defeat an argument that Clausen was treated more favorably than Smith-Jackson. Accordingly, the Magistrate Judge concluded that Smith-Jackson made out a prima facie case of Title VII discrimination, and, because Defendant failed to articulate a legitimate, non-discriminatory reason, the Magistrate Judge recommends the Court deny summary judgment on Smith-Jackson's Title VII claim. The Court finds no plain error in these findings and recommendation, and Defendant's Motion for Summary Judgment is denied on Smith-Jackson's Title VII claim.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge John K. Larkins III's Final Report and Recommendation [83] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Excess Pages [88] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Partial Objections to the R&R [89] and Notice of Filing of Corrected Partial Objections to the R&R [92] are **STRICKEN**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [55] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED** with respect to Smith-Jackson's ADEA claim. Defendant's Motion is **DENIED** with respect to Smith-Jackson's remaining claims.

**SO ORDERED** this 18th day of August, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE